UNITED STATES DISTRICT COURT            SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| ARMANDO GONZALEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION H-12-1017 |
| | § | |
| | § | |
| ROBERT HERRERA, *ET AL.*, | § | |
| Defendants. | § | |

## Opinion on Dismissal

Armando Gonzalez is held in a Texas prison.  He sues prison employees Dr. Fausto Avila, Dr. James Jones, Physician's Assistant (PA) Lisa Vatani, and PA Valerie Steiner, for civil rights violations.  The defendants move for summary judgment.

1. *Claims*

In November of 2008, Gonzalez was transferred to the Pack Unit.  He did not have any skin diseases.  A month later, Gonzalez developed a minor rash on both feet.  Later, it covered his feet and legs.  His skin was itchy and dry, and blistered on the bottom and sides of his feet.  When the blisters burst, blood and other fluids drained out.  On some days, his skin itched horribly all day; on other days, it itched mildly.

On October 12, 2009, PA Guillory provided medication for the rash.  On November 23, 2009, Dr. Santiago, a doctor at the University of Texas Medical Branch, also provided medication for the rash.  During October and November 2009, Gonzalez had the rash on his legs and then it disappeared.  The rash on his feet remains to today.

Dr. Avila, Dr. Jones, PA Vatani, and PA Sterner provided medication for two or more years.  This medication had a small, curative effect.  It temporarily relieved Gonzalez's itching.  The medication, however, did not cure his rash.  The itching periodically returned.  The doctors were well aware of this but kept providing the same medical treatment.  Gonzalez repeatedly told the doctors and physician's assistants that his condition remains.

During January and February of 2011, Gonzalez spoke to UTMB doctors.  He showed his

blistered feet to one doctor and asked her for medical treatment that would "totally cure his feet." She responded that the doctors already knew what condition Gonzalez had. She told him it was a skin disease which by that time might have moved into his blood stream. She said that the disease required oral medication. She added that the medication was expensive and, because of budgetary cuts, Gonzalez could not receive that particular medicine. Gonzalez states that as long as he is incarcerated, he will have the itching disease.

Gonzalez fractured his ankle and needed a cast, on May 17, 2011. On June 3, 2011, Gonzalez went to the hospital where he received a cast covering his right foot and half his leg. On June 7, 2011, he went to the infirmary and told Dr. Jones that with the new cast, he was unable to scratch or apply medication to the rash. Dr. Jones responded that most of the itching was in Gonzalez's mind. He said that all he could do was prescribe the same cream medication. Gonzalez pointed out to Dr. Jones that all the medications that he had prescribed had failed to cure the disease. Gonzalez maintains that Dr. Jones knew that the prescribed medications hardly helped Gonzalez and some were no help at all.

Dr. Jones told Gonzalez how to apply the Triamcinolone cream on his foot. This caused more blisters and worsened the rash. The blisters burst, causing blood and other body fluids to drain inside the cast. To wash his foot, Gonzalez had to use a fingernail clipper to allow the water to drain out of the cast. Gonzalez had to spend the entire night drying the wound. The smell was horrible.

On June 30, 2011, medical staff removed the cast. They provided Gonzalez a removable, plastic "fractural boot" to replace the old cast. On August 13, 2011, Gonzalez wrote the medical practice manager. He requested that Dr. Avila refer him to a dermatologist to find a permanent cure for his skin disease.

On September 27, 2011, Dr. Rae, a dermatologist, saw Gonzalez at another unit. Dr. Rae diagnosed Gonzalez's condition as tinea pedis (athlete's foot) with onychomycosis and prescribed Clotrimazole. Dr. Rae advised him to stop using Triamcinolone because it might worsen his condition. Gonzalez states that Triamcinolone had been the wrong medication all along. Dr. Avila, Jones, Vatani, and Sterner, were aware that this medication was not working but continued to provide it during the past two years. This failure to provide proper medical treatment shows deliberate indifference.

2

When Gonzalez returned to his assigned prison unit, he was not able to receive his medication because it was not on the shelves of the pill window. Dr. Avila and medical administrator Herrington refused to provide it to Gonzalez. Dr. Avila later ordered Clotrimazole, but in a smaller size than the dermatologist, Dr. Rae, had recommended. The last anti-fungus medication that provided some relief to Gonzalez's itchy rash was the small tube of Clotrimazole. Vatani had provided Clotrimazole to Gonzalez from May 13, to June 12, 2011. Gonzalez states that he went for three months and fifteen days without medical care.

The dermatologist recommended Clotrimazole to start on September 27, 2011. Gonzalez did not receive it until December 10, 2011, a delay of more than two months. He claims the prison provided him only two small tubes of Clotrimazole during a period of more than eight months.

Gonzalez concludes by stating that medical personnel called him for an infirmary visit on December 21, 2011. They gave him a small tube, 15 grams, of Clotrimazole, which was not enough for his needs. The medication runs out before the fungus is destroyed. While he waits for the next tube, the fungus regains its strength, is stronger than it had been, and spreads farther.

2. *Defendants' Summary Judgment Motion*

In their motion for summary judgment, the defendants raise twenty-two facts they contend are material to Gonzalez's claims. (36, pp. 2-6) Under these facts, taken as true, the defendants are entitled to summary judgment. Gonzalez essentially agrees with seventeen of the defendants' material facts, numbered 1 through 15, and 21 and 22. Gonzalez disputes five of these material facts, numbered 16, 17, 18, 19, and 20.

> 16. On June 6, 2011, Gonzalez complained that the cast on his foot was creating problems for his athlete's foot. Dr. Jones saw him and prescribed Triamcinolone cream for the itching. Summary Judgment Motion, Ex. B, 35; Ex. D, 3.

> 17. On July 11, 2011, Gonzalez complained that his foot was itching inside his cast. *Id.*, Ex. B, 34. Dr. Avila renewed his prescription for Triamcinolone. *Id.*, Ex. B, 33.

> 18. On August 16, 2011, Gonzalez requested a refill of Triamcinolone and to see a "specialist." *Id.*, Ex. B, 30. On August 23, 2011, Dr. Avila referred him to the Dermatology Clinic for his foot rash. *Id.*, Ex. B, 26. Ex. D, 3. The dermatologist prescribed Clotrimazole with five refills and ordered that the Triamcinolone be stopped. *Id.*, Ex. D, 3. The medical practitioners did not learn of the dermatologist's orders until December 2011. *Id.*, Ex. D, 3.

3

19. On December 7, 2011, Dr. Avila was notified of the dermatologist's assessment and plan from September 27, 2011. *Id.*, Ex. B, 16; Ex. D, 3. The next day, Dr. Avila ordered Clotrimazole 1% cream in a 15gm tube. *Id.*, Ex. B, 15; Ex. D, 3.

20. On December 17, 2011, Gonzalez requested a 60 gm tube of Clotrimazole ordered by the dermatologist, instead of the 15 gm tube provided by the pharmacy. *Id.*, Ex .B, 14. Gonzalez was scheduled to see Vatani on December 19, 2011, but he left the infirmary before the visit. *Id.*, Ex. B, 1; Ex. D, 4. Vatani noted that Gonzalez could submit another request sick call request to be seen. *Id.*, Ex. B, 11.

## 3. *Analysis of Contested Facts*

A defendant is deliberately indifferent when he knows an inmate faces a substantial risk of serious harm and disregards it by not taking reasonable measures. *Farmer v. Brennan*, 511 U.S. (1994). A defendant is not liable unless he knows and disregards an excessive risk to inmate health; the defendant must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the defendant must also draw the inference. *Id.* The standard for a medical care claim is whether the plaintiff has suffered "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Negligence and gross negligence do not show deliberate indifference. *Hare v. City of Corinth,* 74 F.3d 633, 645 (5th Cir. 1996).

### A. Gonzalez Treated for Itching

On June 6, 2011, Gonzalez complained that the cast on his foot was creating problems for his athlete's foot, including itching. The defendants submit evidence that in response to his complaint, Dr. Jones saw Gonzalez and prescribed Triamcinolone cream for his itching. Gonzalez responds that Dr. Jones should have given him instructions that included a warning that if irritation develops, he should stop using the Triamcinolone. He says if the doctor had given these warnings, he would have stopped using the Triamcinolone when his skin became irritated.

Gonzalez contends he suffered unnecessarily and that the doctor knew of the risk concerning skin irritation and disregarded it. He also says the doctor knew he had used Triamcinolone before without success. Gonzalez states he needs the "right medication" to permanently rid himself of the fungus. He maintains Dr. Jones knew the medication did not work because Gonzalez had told him so. Gonzalez states Dr. Jones caused him pain and suffering and provided Triamcinolone out of cruelty.

In his summary judgment response, Gonzalez contends that he told Dr. Avila and the medical

director that he had not received his new medication.  He states he needed the "right medication" to rid himself of the fungus.  Gonzalez says Dr. Jones knew the medications did not work because Gonzalez had told him so.

Gonzalez's claim that Dr. Jones should have given him instructions and warnings shows, at most, negligence or gross negligence.  Gonzalez does not dispute that Dr. Jones and others treated him.  *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (that the defendants provided substantial medical treatment defeats a prisoner's claim of deliberate indifference to medical needs).  Gonzalez's allegations of negligence, medical malpractice, or even gross negligence, do not show deliberate indifference.  *Hare,* 74 F.3d at 645.

Gonzalez raises no facts showing that the doctor knew about the risk of skin irritation and disregarded it.  A prisoner claiming deliberate indifference to serious medical needs must allege facts showing that a defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly show a wanton disregard for any serious medical needs." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).  Gonzalez does not raise facts showing this kind of behavior.

Gonzalez also says the doctor knew he had used Triamcinolone before without it curing his athlete's foot because Gonzalez told the doctor it did not work.   Gonzalez is not a physician and cannot determine for himself things like when a medication is effectively working or how long it will take to remedy the condition under treatment. Therefore, Gonzalez's statement that Dr. Jones knew the medications did not work because Gonzalez told him so does not raise a fact material to his claims.  Under Gonzalez's allegations, there is no showing of deliberate indifference.

B. Dr. Avila Renewed Triamcinolone Prescription

Gonzalez alleges that on July 11, 2011, he complained that his foot was itching inside his cast. Dr. Avila renewed his prescription for Triamcinolone. Gonzalez contends that after an eleven-day delay, Dr. Avila ordered more Triamcinolone for him without a medical visit.  Gonzalez contends "this end[ed] up not being the proper medication." Gonzalez does not raise a constitutional deprivation based on his claim of delay in medical care.   Delay in medical care to a prisoner only violates the Eighth Amendment when there is deliberate indifference which causes substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 193-94 (5th Cir. 1993).  Here, there is no showing of substantial

harm caused by the delay of eleven days.

Gonzalez also claims Dr. Avila  prescribed the wrong medicine.  Prescribing the wrong medication is medical malpractice.  It is not deliberate indifference.  Deliberate indifference must rest on facts clearly showing a defendant's wanton actions. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).  A mistake like prescribing the wrong medications is not wanton behavior. Gonzalez does not overcome the defendants' showing of the absence of facts material to Gonzalez's claims on a short delay and the use of the wrong medication.

C., D. Triamcinolone Given to Gonzalez Late

On August 16, 2011, Gonzalez requested a refill of Triamcinolone and a visit with a specialist.  A week later, Dr. Avila referred Gonzalez to the dermatology clinic for his rash.  The dermatologist prescribed Clotrimazole with five refills and ordered that the Triamcinolone be stopped. The defendants, however, did not learn of the dermatologist's orders changing Gonzalez's medication until December 2011.   On December 7, 2011, Dr. Avila was notified of the dermatologist's assessment and plan from September 27, 2011.  The next day, Dr. Avila ordered Clotrimazole 1% cream in a 15gm tube.

The defendants slipped up in not keeping track of changes to Gonzalez's medical plan.  The medical personnel at Gonzalez's unit failed to timely obtain the new medical plan for him.  This is medical malpractice. The dermatologist who changed the prescription and the other medical personnel who failed to timely learn of the new medication ordered for Gonzalez, however, were not deliberately indifferent to Gonzalez's medical needs.

E. Gonzalez Wanted More Clotrimazole

On December 17, 2011, Gonzalez requested a 60 gm. tube of the Clotrimazole ordered by the dermatologist, instead of the 15 gm. tube provided by the pharmacy.  Medical personnel scheduled Gonzalez to see Vatani on December 19, 2011, but Gonzalez left the infirmary before the visit. Vatani noted in the records that Gonzalez could submit another request sick call request to be seen.

Gonzalez claims the medical practitioners prescribed and used the wrong medication.  He says they should have used Clotrimazole rather than Triamcinolone.  This boils down to a disagreement between Gonzalez and his medical providers.  Gonzalez  does not submit evidence or

6

show that medical personnel "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly show a wanton disregard for any serious medical needs." *Domino*, 239 F.3d at 756. Gonzalez does not raise deliberate indifference under his claim that the defendants provided Clotrimazole instead of Triamcinolone.

4. *Disposition and Conclusion*

That the medical practitioners initially provided Gonzalez medication that was not the most effective for his condition may show medical malpractice. The doctors and physician's assistants may have erred in the care and medications provided Gonzalez. They also may have erred in failing to send him to a doctor sooner or failing to insure that all medical personnel were timely informed of the change in his medical treatment. However, these errors show negligence or, at most, gross negligence; not deliberate indifference. *Hare*, 74 F.3d at 644.

The defendants provided medical treatment to Gonzalez. The medical records and Gonzalez's papers show that prison medical personnel saw and treated him. The medical records showing exams, diagnoses, and medications refute Gonzalez's claim of deliberate indifference to his medical conditions. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). That he was not cured does not show deliberate indifference. Deliberate indifference requires a showing that a defendant was subjectively aware of and disregarded a risk of serious harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). Gonzalez has not shown this. Gonzalez has not defeated the defendants' summary judgment showing and has not shown deliberate indifference. *Domino*, 239 F.3d at 756.

5. *Conclusion*

The summary judgment record does not raise any facts material to Gonzalez's claims. The defendants' motion for summary judgment (36) is granted. All other pending motions and requests for relief are denied.

Signed September _____, 2013, at Houston, Texas.


_____
Lynn N. Hughes
United States District Judge